We're in panel for special setting in order to hear this capital case number two five seven zero zero zero two Keller versus Burl Cain et al. We're ready counsel Ms. Avinoff. May it please the court. Good afternoon my name is Carolyn Ivanoff and I along with my co-counsel Brandi Gatewood represent the petitioner Jason Keller in this appeal. The circumstances surrounding Keller's first two statements in the emergency room could hardly have been more extreme. He had just been shot, he was in extreme pain, and medical personnel were attempting to insert a chest tube. Police officers who were fully aware of these circumstances overreached when they took advantage of Mr. Keller's fragile physical and mental condition to elicit those statements in the emergency room. Those emergency room statements were involuntary and the third statement in the intensive care unit was for the poisonous tree. Moreover Keller's third confession in the ICU was part of a two-step interrogation technique under Missouri versus Siebert and it should have been excluded on that basis. And finally the third confession in the ICU was itself involuntary and should have been excluded on that basis as well. The Mississippi Supreme Court's determinations that none of those statements were involuntary and that Missouri versus Siebert didn't exclude the third statement were an unreasonable application of Supreme Court precedent. Here it's not the defendant's statement of facts but rather the trial court's factual findings about the circumstances in the emergency room that established a process violation. The first statement in the emergency room was taken very shortly after Mr. Keller was brought there by ambulance and the trial court at the record on appeal at 3090 to 91 described the circumstances as follows. It was taken very shortly after Mr. Keller arrived at the ER. The tape begins with Shouse continuing to question Keller. Within minutes an abbreviated Miranda warning is quickly recited after which investigator Shouse continues to question Keller. If I could just interrupt just just even though you do have a little more time than usual is it fair to say your argument is both involuntariness as to the third but primarily you think an unreasonable application of law in terms of Siebert did apply? Would you say that's a sort of a fair distillation? I think that the prime they're they're really three primary arguments. The first is that the Mississippi Supreme Court applied the wrong fruit-of-the-poisonous-tree analysis because the first two statements in the emergency room should have been involuntary should have been found involuntary and the Mississippi Supreme Court should have applied the classic application and fruit-of-the-poisonous-tree instead of determining that because a valid Miranda waiver was given. But LSTAT does say the police can elicit a final third if they give Miranda warning correct? That's correct. The LSTAT says the police can elicit a third statement with a valid Miranda warning if the prior statement was the product of an invalid Miranda warning but was otherwise voluntary. Okay and so we have a fact issue of voluntariness as to the third in terms of defining below was it was voluntary once he's in the ICU and you contest that but that's a fact question correct me if I'm wrong. Then we have the legal question of okay LSTAT exists there's the exception CBERT you fit the exception that Mississippi Court said you don't. Am I missing? That's correct but there's also a legal argument when it comes to the voluntariness of the confessions because the Mississippi Supreme Court held that confessions cannot be involuntary unless there is unless the police officers personally exert physical or psychological pressure over the defendant and the court in Colorado versus Connolly did establish that there must be police overreaching to render. Right but didn't on remand that issue was looked into and you had doctor was his name Dr. Jackson? That's correct. He said still confused still pain addled but the state courts didn't accept that so that's correct he did say that but the state court was applying the incorrect legal standard to both finding that the first two statements were in were I'm sorry voluntary and that this third statement was voluntary because the standard is not whether the police personally exert physical or psychological pressure the standard is whether the police overreached and that can be done whether the police created the coercive environment or whether a coercive environment exists and the police know about it and they take advantage of that. I guess what I'm and I appreciate all that and I think I understand that what is your primary argument for AEDPA relief if you have I know you you've certainly preserved them all we will work through them all but the one that you think is shows the most egregious error in the by the state courts. Most the most egregious error by the state courts is holding that the first two statements in the emergency room were involuntary I'm sorry were voluntary because the police did not exert physical or psychological pressure and in holding that they applied the LSTAT fruit-of-the-poisonous-tree analysis rather than the classic broad application so the Mississippi Supreme Court used the wrong standard to determine there was no police overreaching and then with the first two ER statements and then determine that this third statement was not fruit-of-the-poisonous-tree because he was given a valid Miranda waiver our primary argument the first two were taken out that's correct the first two statements were excluded but under a classic fruit-of-the-poisonous-tree analysis if the prior statement is involuntary there has to be some significant intervening event to render the subsequent statement a product of free will such that the primary taint of the unconstitutional activity so I think what you're trying to say and it may be fair for you to say this you're trying strongly to preserve two different lines of error fruit-of-the-poisonous-tree independent from Siebert but also Siebert yes that is that's what you're arguing and what's your best authority for this independent fruit-of-the-poisonous-tree in other words voluntary involuntary whatever we want to describe the first two as then then 11 hours later in a different place he's deemed to be voluntary he's given warnings and he confesses what case would say that's still the fruit-of-the-poisonous-tree what Fifth Amendment Miranda case well I think Elstad would say that Elstad is a case that allows the police to do that so do you have any circuit level case that says independent of Siebert still invalid despite voluntary defendant and Miranda warning you have a case that says that there is a the Brown vs. Illinois is a fruit-of-the-poisonous-tree case it involves an illegal arrest right but there the subsequent statement after the illegal arrest was he was Mirandized before giving the statement but in that case the court reasoned that the illegal activity that the unconstitutional activity that surrounded the arrest required broad application of fruit-of-the-poisonous-tree and in that circumstance the court should look at the totality of the factors when you have an unconstitutional statement in the first instance or an illegal arrest in Brown then the court needs to look at various factors to determine if the primary taint has been purged and the court specifically said in Brown vs. Illinois that the Miranda warning is not enough there has to be something else because when you the defendant has already let the cat out of the bag there is psychological impact but the cat out of the bag theory is what the Elstad Siebert world is working with too it's the two-step dance ask questions first then you've got the back cat out of the bag and you jump so I guess I'm really having difficulty seeing a separate line of authority clearly established that the state courts um we haven't really gone into Siebert but you're pushing back against that being your primary argument yes your honor the primary argument and I think it's best set forth in our reply briefing but the primary argument is that because that first statement was involuntary the the Mississippi Supreme Court applied sort of an abbreviated for the poisonous tree analysis that the court in Elstad applied because the first statement was voluntary though it was the product of an invalid Miranda waiver so in Elstad the court said where you have an invalid Miranda waiver but a voluntary statement a Miranda warning is enough to purge the primary taint however if your first statement is involuntary then the Miranda warning is not enough to purge the primary taint and the court looks at various facts but just a sort of a policy problem in terms of a lot of times defendants end up in emergency rooms they've been in some terrible criminal situation they're there they're in great pain police do good police work when they go to them it's responsible for them to go ask questions trying to make sure there's no other gun anywhere else is your position if this line of authority exists independent of Siebert that once they try if they don't give a Miranda warning they can never come back and Mirandize and get an incrimination is the logic of your position that once they go as they do almost every day to emergency rooms and in the rush of things don't give Miranda that's it police can never come back to that defendant no there are very the court looks at the totality of the circumstance but what did they do else wrong does the remand look to me somewhat okay let's make sure the police did okay here I didn't what is the only really thing that begins to look like an earmark of coercion that in the second interview they said no water until you answer our question is that sort of the worst moment of coercion I think that the worst it's the totality of the circumstances in the ER that established the coercion because the as the trial court explained at the record on appeal at 1999 to 2000 when he gave those statements he was barely alert I know but but I'm trying to say to you I think that happens a lot people are input shootouts and they're in really bad and the police still do go there I don't see much coercive or trickery but you can push back on it I think that Blackburn versus Alabama would have stabbed does establish that that that is police overreaching and renders the statement involuntary in that case the defendant was mentally ill the police officers knew that he was mentally ill and they took advantage of that by interrogating him for several hours in a tiny room with filled with police officers and he was isolated from friends and family and legal counsel the circle and the court there found that his statement was involuntary because the police overreach took advantage of his mental condition in the same circumstances exist here but they're even more extreme because Keller was like like Blackburn crowded in an emergent an emergency room with up to three police officers and medical personnel he hadn't been had an opportunity to meet with friends or family he hadn't had an opportunity to meet with counsel but so the state court said can't use those government you came you can't use them you may have found where the other guns and stuff so so but therefore never back again 11 hours later gets a Miranda warning he's feeling better he's alert and he decides still to incriminate himself well the court has given factors that the Supreme Court has given factors that you can look at to determine if the primary taint has been purged such that a later obtained statement is sufficiently a product of free will and the court now stat sets forth those factors and those include whether the suspect has spoken with a lawyer the time that passes the change in place of the interrogation the change in the identity of the interrogators and brown versus Illinois also mentions the flagrancy of the official misconduct are you going to get to seabird at all or do you not press a seabird air I do believe even if the first statements were found voluntary seabird applies that this was a two-step interrogation that's impermissible under seabird the Mississippi Supreme Court rejected the application of seabird finding that it only applies in a single interview scenario but the Supreme Court never said that the Supreme Court said that that when the warrant phase of questioning following an unwarrant phase of questioning overlaps and content and it's close in time then warrant phase of questioning as part of a two-step interrogation and should be excluded and the seabird court sets forth factors that should be looked at to determine whether it fits the rule of seabird and each of those factors really aligned with the facts of this case the first factor is the completeness and detail of the questions and answers in the first round of interrogation and in that first round of interrogation the officers Mr. Keller left nothing unsaid of incriminating potential the second factor is the overlapping content of the two statements and he confessed to the same things in ICU as he did when he was in the ER the third factor is the continuity of police personnel and in this case officer Brown questioned him the second time in the ER with no Miranda warning and he's the one who came back to question him in the ICU about 11 hours later the fourth factor is the degree to which the interrogation interrogators questions treated the second round of questioning as continuous with the first and the record establishes that the officer before he even gave his Miranda warning he reminded Keller I know you already agreed to talk to us but I just thought I'd give you this morning anyway so the third yeah no I think those factors will be open obviously those will be questions we ask to opposing counsel a little bit but but I guess what I'm asking you is just legally how did the fact that you may be able to check off those factors how would you say that relates to my overall impression that we look at two things were there coercive police tactics used one and two was there no curative lapse of time because if you look at it from that way it's hard to see I think coercion earmarks of coercion the trickery stuff and second of all there clearly was an 11-hour lapse of time there was the the court in that the facts of that case the officer did testify that he was using a technique to secure the second statement and we don't have that fact here but what the Siebert court really emphasized was that what's important is that the second statement is a product of free will and not a product of the prior unwarranted questioning and that's what we have here because mr. Keller was still in the officer he reminded him that he'd already agreed to talk to him there was nothing there was a period of time you know while mr. Keller was in hospital and under police guard that entire time that that passed but there was no nothing that would have made Keller feel like there is no state court finding of coercion is that that's correct so we'd have to find that fact error first well the court looks at the trial courts factual findings with a presumption of correctness but the overall legal conclusion the court can be de novo and the whether there was police overreaching is a legal standard that so what do you mean in your reply brief that first footnote when you sort of retracted the suggestion there was overreach do you recall that oh yes that was because we I misstated that the trial court specifically found that there was I think I said something like specifically found that there was overreaching that was not correct so there's no state court finding of overreach but you do you agree we would have to find overreach you would have to find overreaching to find I I don't think Siebert arrow requires overreaching it just requires a two-step interrogation how does all that work I think that the the Mississippi Supreme Court unreasonably applied precedent in holding that Siebert had to be part of a single interview scenario and it really summarily dispensed with Siebert on that basis but Siebert doesn't say that Siebert lists the factors that we went through and further the primary purpose of Siebert is to ensure that the the defendant understands that the second warned round of questioning isn't simply a continuation of the first you have any see this is not it's just an honest question you have any Siebert case circuit level where it's been applied when the lapse of time has been this this long do you know of anyone I I'm with you and we'll see what opposing counsel says that it isn't a single in that that makes no sense to me that it would have to be a single one cops put them in a cell take a little break come back again that's not a single continuous interview but the Siebert trap could exist but I'm just wondering have you ever seen a Siebert exclusion of a confession when the time between the alleged question first and the eventual one is 11 hours I have not I I saw and I can't tell you what it is right off the top of my head but I saw a Fifth Circuit case where a year had passed and in that circumstance the Fifth Circuit said that that was too long I would agree with that but here it is true that 11 hours have passed but it's custodial because I take it he had he had handcuffs while he's in the hospital I don't know if he had handcuffs but he was under guard the entire time he was under guard there was a police officer with him what no one's never argued that he was not in custody that's correct the the third basis that we think that the Mississippi Supreme Court unreasonably applied Supreme Court precedent is holding that the third statement itself was was voluntary in that circumstances again as with the first two statements in the ER Mr. Keller was suffering from a gunshot wound he was still in sufficient enough deteriorating condition that he was in the intensive care unit and it was overreaching for the police to come in and question him under those circumstances the Supreme Court in Menzies versus Arizona succinctly stated that it's hard to imagine a situation less conducive to the exercise of rational intellect and free will than Menzies he had been seriously wounded just a few hours earlier and had arrived at the hospital to depressed almost to the point of a coma according to his attending physician although he had received some treatment he was his condition at the time of interrogation was still sufficiently serious that he was in the intensive care unit he was in at the complete mercy of the detective now recognizing that the officers in Siebert also ignored that Menzies requested counsel Keller this is the same reasoning applies to Mr. Keller being in the ICU but the state courts did hear that exact testimony from dr. Jackson dr. Jackson said he's still under the state of mind they are structuring their questions and then that court didn't credit dr. Jackson's testimony are you deviating from what dr. Jackson said already wants to a state court judge I guess I'm not TV no no you're saying what the doctor said you're saying he's right but the state court said we're not persuaded that's correct and I think that the state court based part of that determination on the incorrect legal standard that for a police officers exerting physical or psychological pressure and that's that's not the standard the court in Connolly which the state court and the state relies upon took pains to distinguish itself from Blackburn and Townsend versus Zane two cases where the police were aware of the defendants fragile mental condition as opposed to Connolly where the defendant approached the officer on the street and confessed the officer wasn't overreaching because he didn't know that the defendant suffered a from mental illness until later after he'd been taken into custody and Miranda eyes and so the court in Colorado versus Connolly specifically distinguished that the that that case is different from Townsend the the police don't need to create create the coercive environment if they know a course of environment exists it's overreaching for them to take advantage of the defendants condition that's what we had here with the first two confessions in the ER and with the confession in the ICU the police were fully aware of his very fragile mental state and and they overreached when they took advantage of that and particularly important I think in the emergency room the trial court found and the Mississippi Supreme Court agreed that Keller was barely alert when they were questioning him his statement certainly can't be said to be a product of free will when when he's in such pain that he questions have to be repeated for him to answer them and and the police overreach taking advantage of him being in that condition that was coercion and because of that the third statement in the ICU should have been excluded as for under a broad application the classic application of through the poisonous tree the Miranda warning wasn't enough to purge the Mary Tate of those two coerced statements in the emergency room even if those statements in the emergency room were voluntary Siebert should apply because this was a two-step interrogation they returned to mr. Keller and reminded him that he already agreed to speak to him to them and the third statement in the ICU was also involuntary police overreach knowing that mr. Keller was in an extremely fragile condition I think I'm just about out of time okay all right thank you you reserved for bottle time thank you all right that's all may it please the court LaDonna Holland for respondents this court should denial of habeas relief because that court correctly applied at his deferential standards when reviewing the Mississippi Supreme Court's decision on the admissibility of petitioners ICU statement because petitioner did not show that the Mississippi Supreme Court's decision is contrary to any US Supreme Court holding did not unreasonably apply any US Supreme Court holding and is not based on an unreasonable determination of record facts and per required the trial court to deny the district court to deny habeas relief why did it remand the first time what was clarified on the remand the first suppression order really focused only on the reason for the exclusion of the first two statements which was the problem with waiver an unintelligent unknowing waiver and based on the appellants briefing direct kill brief that the Mississippi Supreme Court received they focused really heavily on this idea that there was coercion involved and because the trial court at the first in the first suppression order didn't make explicit explicit coercion findings because again it just excluded the first two statements because of the bad waiver the Mississippi Supreme Court just wanted essentially to give petitioner another chance to try to prove coercion is the respondents take and so when we went back for a second evidentiary hearing petitioner was been allowed to because he had put on no evidence at all at the first hearing so at the second hearing he was given the opportunity to present a medical expert in an attempt to try to transform that involuntary waiver into an involuntary statement and that's really that conflation that petitioner is trying to do conflate an involuntary waiver with an involuntary statement really infects all of their claims before this but if in fact then the district court had credited dr. Jackson that he was still confused he didn't voluntarily waive and the police restructured questions to get the same answer then we'd be right in the heartland of Siebert correct if the trial court had if they'd accepted that the tactics were to do justice dr. Jackson testified they did dr. Jackson's opinions went more toward coercion of the statement and Siebert still requires dr. Jackson said there was no voluntary waiver he said there was no voluntary waiver I'm quite sure he said he was still confused and additionally the police his words restructured the question after the third statement I'm sorry I'm understood yes that was dr. Jackson's opinion however there was competing evidence on almost all of those brains I mean there was the truth did the state trial court then decisively say I don't credit dr. Jackson the yeah so there's no issue of coercion is that your position that that's correct the state court the trial court made at least six distinct no coercion findings in that order those are factual findings that are entitled to be to deference and petitioner hasn't come close to what what did the state court say about the don't give him water until he answers that that police never said that officers testified and even though the first recording is difficult to hear the officers testified and you can't hear in the recording of the first statement that this was in the second this was in the second right when actually it was really the first I mean that that's even what the claim has been at the outset well so in the ER there are two statements in the ER and the statements about just going to give you a record say 20 to 17 that's the first one police withhold water anyway opposing counsel will correct it if they're on let's jump to Siebert because and I will back up into the other line of authority but you heard me a little skeptical there's clearly established law that there's an independent through the Poison Street but Siebert is pretty established so what do we do if the Mississippi court said Siebert only applies to a single interview and that we don't think that or one of us and you don't think that's the law well for one that wasn't unreasonable for the Mississippi Supreme Court to interpret Siebert that way because the Siebert decision explicitly calls it a continued interrogation right as in a single interrogation and even if the Mississippi Supreme Court were wrong about whether it takes one interrogation or two this case is knocked out of Siebert territory by virtue of the fact that petitioner was Miran dies on the front end Siebert is concerned wholly concerned with an interrogation technique called question first warn later where officers take an unworn confession give a midstream Miranda warning and then just get this is that in your brief I mean that doesn't make any sense to me if you Miranda is someone who is according to state courts utterly unable to understand anything you can't get out of Siebert land I don't think by saying oh well that Miranda still counts so what I look at this is state courts have said that first whatever happened in that first one it's out the door then he comes back second interview he gets Miranda but the state courts still say you can't use that because he's still so medicated and in so much pain that's how I read this record then we get to the third he's in the ICU he is Miran dies and he incriminates again so it's not far from Siebert your honor the state's position is that the Mississippi Supreme Court was correct to apply Elstad not Siebert because Elstad very clearly holds that in a situation like the one before this court yeah where you have an involuntary waiver that produces a voluntary statement that that doesn't bar the admissibility of a future statement and so what about her argument this is a genuine confusion of mine she says okay but we've got established five factors that qualify for Siebert and we've got elements of all whereas your point is sort of one that I was thinking which is you really look for coercion plus no cure and here you would say there's never been a finding of coercion and there was a cure of 11 hours well I have a little bit of a different take on the curative measure which is there there was nothing here to cure because the reason for the exclusion was petitioners own inability to fully appreciate the rights he was waiving and the full consequences of waiving those rights that was the trial court finding and that was based on his pain level and there was there's nothing to cure by the time we get to the third statement then why does the same officer return and makes a direct reference oh we got to just do this but you've already talked to us doesn't that sound like the Siebert trap telling a person I've got to read you Miranda but don't worry it doesn't at all to me your honor because the Miranda warnings here could still be effective under this set of facts and certainly because of the length and time that had passed in Siebert the second well the Miranda warnings had no effect could not possibly have an effect when a suspect is sitting there and asked by police officer just go ahead and give me a full confession you get the full confession and then give the Miranda warnings the Siebert court said no reasonable person would have thought that they truly had the right to remain silent or to counsel in that type of scenario which is just not what we have here and on petitioners claim that the Mississippi Supreme Court should have applied a fruit of the poisonous tree analysis to knock out that third state else that also very clearly rejects the idea that the fruit of the poisonous tree exclusionary rule that is for fourth amendment violation has any applicability to a situation there is no separate doctor it's Siebert or nothing or else dad or nothing yeah okay um and and let even all of the cases that petitioner cited the brown be able to wait that that's a fourth amendment violation and the Elstad court explained that the reason we don't need that type of exclusionary rule when there's a Miranda violation is because Miranda has a built-in remedy I mean if there's a Miranda violation the statements out that's the complete remedy whereas if officers violate the Fourth Amendment and obtain a statement in order for prosecutors to use that statement in trial they have to show more than the statement is voluntary they also then have to engage in this purging the primary taint because again the statement is tainted by the officers unconstitutional conduct so part of the poisonous tree is designed to prevent officers from engaging in unlawful searches and seizures to obtain evidence and that's just not applicable applicable here as all stat really explains am I right they came looking for another gun or am I making that up that they came they came to look they came right to the emergency room even though he was really compromised state because there was some exigency they were worried about that's right well they they first of all thought he had a gun when he was pulled over and admittedly aimed something at officers to try to get them to shoot him so they thought he had a gun and their first question to him that he answered was did you shoot that lady today after being Mirandized and he said yes and so that was the officer's testimony that's why there's only about five minutes of questioning during that first interview and the only information they got was yes I shot that lady and here's where the gun is the two investigators left the emergency room immediately after that to try to secure that gun which petitioner told them was was it a crack house I mean it's a public safety situation that they you know reasonably want to go try to retrieve the gun your honors petitioner just cannot prevail in this case because the Mississippi Supreme Court adjudicated this issue on the merits and unless he can show an exception met under d1 or d2 which he has not done in the briefing or at argument today it would there can be no reverse I mean EDPA requires the denial of relief unless those exceptions are met it sounds like petitioners relying heavily on the Blackburn case to say that the Mississippi Supreme Court somehow unreasonably applied that case but all that Blackburn holds is that a coerced confession violates the 14th amendment and can't be used there's no dispute in that Blackburn just involved a totality of the circumstances test which was employed here and it's not enough to have circumstances in common between petitioners case and mr. Blackburn's case that that's that's just not how it works even if this were on direct review it's the totality of the circumstances that controls and post Colorado v Connolly we now know that before you even get to a review of the other relevant circumstances there has to be a finding of police coercion or overreaching before there can be a finding that a statement is involuntary and again the trial court made numerous factual findings that we are bound by on was there any daylight between judge Johnson's federal habeas decision the 30 pages devoted this issue and the last reason state court you understand it tracks analytically judge Johnson provide provided greater depth and additional cases from this court that just fortified really what the Mississippi Supreme Court had already found in its application of Elstad a one of the cases that judge Johnson mentioned from this court is United States versus Courtney 2006 case from this court where this court stated that Siebert requires the suppress the suppression of a post-warning statement only where a deliberate two-step strategy is used and no curative measures are taken and where that strategy is not used the admissibility of post-warning statements continues to be governed by the principles of Elstad so it's respondents take that it's clear enough on the face of Siebert and Elstad alone that this case is it's just not the Siebert case this is an Elstad world and this court seems to also be very clear that Siebert does not apply unless there's this deliberate two-step strategy what do you understand the mr. Keller's articulation of it era to be counsel opposite says that the Mississippi Supreme Court unreasonably applied Siebert in Blackburn so petitioners apparently traveling under d1 and in order for him to prevail or to show that he meets that d1 exception he's got to show that the Mississippi Supreme Court arrived at a conclusion opposite to that reached by the Blackburn Court or the Siebert Court on a set of materially indistinguishable facts and here the facts are quite different than they were in either of those cases so it's already difficult for petitioner to prevail under d1 but under d2 it's just impossible because while voluntariness is a legal question all of the subsidiary factual findings that come with voluntariness and it's more most importantly here is the lack of coercion that just gets d2 difference and under e1 those facts are presumed correct unless petitioner rebuts them with clear and convincing evidence the only evidence they mentioned in their brief was dr. Jackson's testimony that was already considered and rejected by the trial court there was competing testimony about the effects of the morphine and things like that and the only two statements or examples that dr. Jackson could muster for what counts as coercion in this case is a claim that officers withheld water in exchange for this statement all officers present testified that did not happen the recording contradicts that it was medical personnel who said he can't have water until the doctor sees him and we see what kind of procedure he may need and then the statement that officers made at the beginning of the first interview to the effect of we don't know what's going to happen to you in the next few hours dr. Jackson felt that was coercive and that's the only evidence of that dr. Jackson really pushed and again the trial court found found against him on those claims your honor because there was no coercion in any of the statements the petitioner got all that he was entitled to which was exclusion of the first two statements for a bad waiver the third statement was warned even if there wasn't an explicit waiver of Miranda rights petitioners actions demonstrated a willingness to speak to police so we know we also have a valid waiver for the third statement and with a third statement just like the first two there's a complete absence of police coercion or overreaching and for these reasons the Mississippi Supreme Court's decision was not only reasonable but correct was Craig shows he was the first investigating officer interrogator so when he's asked question do you remember investigator investigator Perry telling Mr. Keller when he was moaning and groaning for water that if you cooperate we'll see what we can do for you answer I believe I heard him say that yes I did officers did try to get him water it was the officers who asked medical personnel we will we'll get you water if you cooperate with us oh I didn't pick up on that part do you remember investigator Perry telling Keller while he's moaning and groaning for water if you cooperate we'll see what we can do Perry certainly test a funny I've got 2217 statement anyway I'm sorry um I did not pick up on that wording well maybe I'm just pulling it up so opposing counsel can see if that's that was you know that you cited our court decision Nunez Sanchez and we're looking for earmarks of coercion sorry I was trying to see if I had a quick note on how Perry described that interaction because I believe Perry and Alan also testified that you know it was not their decision to withhold water it was not the officer's decision to withhold water and actually on the the audio recording you can hear one of the officers asking medical personnel if petitioner can have water and it's you know some voice that the officers testified was medical personnel that said he can't say water okay and when with that your honors there there's been no coercion in any statement petitioner has failed to demonstrate that the Mississippi Supreme Court's decision is contrary to any clearly established Supreme Court holding and reasonably supply unreasonably applied in a United States Supreme Court holding or was based on an unreasonable determination of fact so the respondents would ask this court to affirm the district court's denial of habeas relief all right thank you back to you your honor the state's position that Elstad doesn't establish that a prior coerced confession mandates the classic application of fruit-of-the-poisonous-tree is incorrect the court and Elstad specifically states well it's the stick exactly prior involuntary statement I know you're correct but all that was found here was involuntary a prior involuntary statement we argue that the statement was coerced because of the prior statements were coerced because of police overreaching and so when that prior statement is coerced there's and there's a due process violation the court and Elstad quoting Westover versus United States which was decided with Miranda said that when a prior statement is actually coerced the time that passes between the confessions the change in place of the interrogation and the identity of the interrogators all bear on whether that coercion carried over into the second confession the Mississippi Supreme Court didn't look at those factors Mississippi Supreme Court said that Miranda was warning was given and some time had passed therefore the the primary chain has been purged but it was applying the analysis from Elstad that applies when the initial confession is voluntary in this case the initial confession was involuntary because of police overreaching but no state court has ever found overreach so we have to your theory would be we have to make a fact the courts were wrong well respectfully your honor I don't think that's true because you think they made a legal error because it's necessarily coercive whenever police go to an and ask somebody about what happened without giving Miranda that's always legally course the Mississippi Supreme Court's error was in saying that for coercion to exist the police must personally exert physical or psychological pressure over the defendant but I think what you're saying is it's always improper psychological pressure to ask somebody who's medicated and in an emergency room they didn't do anything else they just went there and asked him unless this little water incident is it well certainly there is the water incident okay now are you familiar with the facts of the water incident yes I am which interview was it in and what did the courts except happen the water incident happened in the first round of questioning in the ER I don't know if the court's an opportunity to listen to the recordings but no we have you can't hear really what he's saying but the officer did testify that he told him that mr. Keller was begging for water and he told him and that's I think you found out the record on appeal at 2017 if you cooperate with us we'll see what we can do the the district court dispensed with that saying that he couldn't be given water because he was about to have but mr. Keller didn't know that mr. Keller was being told by the officers that he needed to cooperate and then they could see about getting him some water and that's certainly police overreaching he was in extreme pain and as you can hear on the recordings he's barely alert and so he can't my difficulty you just you want to know exactly our concerns is you know this just looked like the state Supreme Court was pretty darn careful to send it back to understand if there was coercion and then there was evidence on the issue and then the facts didn't come out that way the you think the legal error just was there from start to finish is there a point on the remand where defense counsel tried to say you all don't even understand the structure that there is coercion necessarily when you're asking questions to somebody who's in this type did the defense ever try to say you've got a legal misapprehension at the state court level yeah excuse me I I'm not I'm not sure your honor I would have to review the the state's arguments on that front I asked you any questions keep I would just point out also that there's a there the third statement was also the product of an invalid Miranda waiver because for the same reasons that the statement was involuntary he but he couldn't waive his Miranda rights because I'll give you a minute to just gonna succinctly thank you give us the you know cover several statements and so on so we had to cover so you know if you want to sort of succinctly but not detour too far you know kind of what you want to leave the panel with you know from this yes your honor I think that importantly the court can base its decision solely on the Mississippi Supreme Court's unreasonable application of Supreme Court precedent in finding that coercion must be physical or psychological exertion by the police and that's the standard that it looked at the facts of the trial court on the trial courts findings are powerful enough that this court doesn't have to find an unreasonable determination of facts however there is an argument that there was an unreasonable determination of facts as well because of the things like the court dispensing with the defendant asking for water and them actually telling him he could have water well there's just so many layers of fact finding here you know it's you know there's a variable ocean of fact finding you know I mean that's a stakeholder to different levels sent back etc etc so just to say quote an unreasonable application of facts close quote the Supreme Court law kind of somewhat begs the question I mean it's one thing to say it you've almost in because there's so many layers of facts here both with respect to the three confessions and you know court held the first two were out but you want us to say well they really shouldn't have said that they were out so that they all can be strung together to say you know that you kind of don't want that part of what happened your arguments premise they should have not said the other two are out but being included as all three so therefore you can say they're all infected and therefore they all go out but that's not factually and chronologically what happened so it makes it a little hard to kind of follow the order of unringing that Bell because in fact no point in tuning that's what happened below right so I mean how do we unlearn that he's here I'm saying I mean in reality the first two were thrown out right that's right your honor the I get your argument you're saying nonetheless despite the time your argument is that the third was still was got this tinge the stink hadn't completely been washed out so to speak right that's correct so that the factual determination as to the third one is where you're really sinking your teeth in right that your honor that is the the of our three arguments the one that is most actually we feel that the the Mississippi Supreme Court made an unreasonable determination of facts but now of course the descent from the Mississippi Supreme Court said they violated their own rules they gave the state a do-over to fix the problem and so they I mean that's what he said that he dissented because he said the Supreme Court in effect gave the state a do-over and then gave him an order which instructed them what to do to fix the problem and dutifully according to him they did what the head guidance to do so as to barely make impenetrable the argument that you make now I didn't say that that's just you know I just I just read the stuff you know but that's what the center said was that the Supreme Court should have made the determination based on what's there the first two were bad should have included everyone's bad booming out but the center says they change their rule rather than do what they do they remand that a new determination state picks up on it cures it da da da da and then that's the factual but that's now coming up that's subject to the EDPR determination now whether what that was wise quote-unquote to do it still doesn't get you around the EDPR D1 D2 I mean that is the formidable blockade that in 1996 with a RERA and all the rest of those were put there in order to not allow leapfrogging state court determinations whether you like them or not so that's the point council opposite says D2 you just dead in the water period no need to talk about it so D1 is kind of where you are so that long-winded harangue by me was to give you one last shot to say why D1 gets you through the gate D1 gets us relief because the Mississippi Supreme Court unreasonably applied Blackburn Connolly Siebert and Townsend versus same the even if we are simply relying on the trial courts own findings the first co-op first confessions were coerced and the third confession was coerced because the defendants mental condition was taken advantage of by the police officers the Mississippi Supreme Court district court used words like trickery deceit that's not the requirement to find coercion all right okay appreciate it the seven of you are CJA counsel appointed in this case correct that's correct all right it cannot be overstated the appreciation that our court as a whole a panel in particular appreciation we have for you and other like-minded who take on these extraordinarily difficult unpopular nuanced cases and nonetheless do what great lawyers do brief them argument give them the best shot and so for that we applaud you for being willing to be a CJA counsel but more to the point of doing an excellent job on behalf of your client regardless of what the panel otherwise comes up and to that point we salute you and thank you both thank you your honor I appreciate that having said that thank you counsel that concludes the proceedings in this case this panel will stand adjourned